# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

**Anthony John Morris,**
    Petitioner,

vs.                                                      No. CIV. 17-325 JAP/CG

**Ron Haynes, Warden**,
    Respondent.

## MEMORANDUM ORDER AND OPINION

Petitioner Anthony John Morris (Petitioner) filed a Petition[1] asking the Court for a Writ of Habeas Corpus, arguing that his New Mexico first-degree murder conviction violates his constitutional rights. He makes the following claims: (1) there was insufficient evidence to prove Petitioner possessed any premeditated thought requisite for a first-degree murder charge and conviction; (2) the state failed to present any evidence of deliberate intent to kill. In response, Warden Ron Haynes (Respondent) contends that substantial evidence supports Petitioner's conviction.[2] On February 12, 2017, Petitioner untimely sought to amend his Petition to include a claim of ineffective assistance of appellate counsel based on appellate counsel's failure to argue that trial counsel had failed to object or contest state forensic evidence.[3] The Court has reviewed the Motion and all briefing. For the reasons explained below, the Court denies Petitioner leave to amend his Petition and dismisses the Petition with prejudice.

## Background

On December 26, 1991, at approximately 7:00 p.m., Victor Zabel Senior[4] found the body of Mary DuPris on a road on the outskirts of Albuquerque, New Mexico.

---

[1] *See* PETITION UNDER 28 U.S.C. 2254 FOR A WRIT OF HABEAS CORPUS (Doc. 1). Initially, Mr. Morris filed this Petition under 28 U.S.C. §2241 for a Writ of Habeas Corpus; however, for the following reasons, the Petition was docketed as indicated above. Section 2241 is a petition to modify conditions of actual imprisonment. *See Montez v. McKinna*, 208 F.3d 862, 865-866 (10th Cir. 2000) (differentiating between the two types of petitions). In his Petition, Petitioner does not challenge conditions surrounding his imprisonment, but challenges his state court conviction. The appropriate statute for challenging a state court conviction in federal court is 28 U.S.C. §2254. *Id.* Because Mr. Morris is a pro se petitioner, the Court construes his Petition as falling under §2254. *Id.* (court may liberally construe a pro se claim asserted under the wrong statute as a claim under the appropriate statute).
[2] *See* RESPONDENT'S ANSWER TO PRO SE PETITIONER ANTHONY JOHN MORRIS' PETITION FOR A WRIT OF HABEAS CORPUS (Doc. 13).
[3] *See* PETITIONER'S REPLY TO RESPONDENTS ANSWER TO PETITION FOR HABEAS CORPUS (28 U.S.C. §2254) (Doc. 15).
[4] For clarity, hereinafter, the text will refer to Victor Zabel Senior as Mr. Zabel Sr. and to Victor Zabel Junior as Mr. Zabel Jr.

That morning, Mary DuPris, her children, her sister, her mother, and a friend drove from their residence in Acomita, New Mexico to Albuquerque, New Mexico. After dropping her mother off to work at 8:00 a.m., Mary DuPris and the others spent the day driving to various locations in the city. At a grocery store, Mary DuPris purchased alcohol, which she drank.

At 4:30 p.m., they went to pick up Mary DuPris' mother in downtown Albuquerque. Her mother decided to take over driving from Mary DuPris because of the alcohol her daughter had consumed. Mary DuPris decided not to return to Acomita with her family, but to stay in Albuquerque with her aunt. She gathered her personal belongings from the car and started walking toward Central Avenue.

Witness Donja Kaye Nations, who at that time managed a hotel at 1020 Central Avenue, reported seeing a woman who resembled Mary DuPris walking on Central Avenue sometime that afternoon. A red truck pulled past the woman and stopped. A man jumped out, picked up the woman, and forced her into the car. According to Ms. Nations, the woman appeared terrified and did not seem to know the man. Ms. Nations could not positively identify Petitioner as the man who abducted the woman.

On that day, the Zabel family worked at the Double Eagle Airport outside of Albuquerque. Around 6:30 p.m., Victor Zabel Jr. left the airport before his father. As he drove home, he saw a yellow car make a U-turn and head toward the airport. He also passed a red truck stopped by the side of the road. He did not see the driver of the red truck or anything else out of the ordinary. At the time Mr. Zabel Jr. drove by, the road was clear of obstacles.

Approximately fifteen minutes later, Mr. Zabel Sr. left the airport using the same road. About one mile from the highway, Mr. Zabel Sr. saw something in the road and unsuccessfully swerved to avoid it. He looked back to see what he had hit and realized it was a person. After reporting the incident to the police from a phone at a nearby gas station, Mr. Zabel Sr. returned to the scene and waited. When the police arrived, they processed the scene believing that a motor vehicle accident had killed Mary DuPris. Later, the chief medical examiner determined the cause of death as a gunshot wound to the right temple from a 9-millimeter handgun. Mary DuPris' body had other injuries consistent with a vehicle or vehicles having hit her post mortem.

During the autopsy, the examiner took several swabs from the body. The swabs revealed the presence of sperm cells in the victim's mouth and stomach. In 1991, DNA testing was not as sophisticated as it is today,

so it could not establish the identity of the individual who deposited the cells. The police kept the swabs as evidence.

Five months later, another woman was murdered with a 9-millimeter handgun. Her body was found 0.7 miles from where Mary DuPris had been found. The police suspected Calvin Winfield committed the crime. Subsequently, Mr. Winfield committed suicide using a 9-millimeter handgun. Forensic examiners inspected the 9-millimeter handgun for evidence of use in the woman's homicide, Winsfield's suicide, and Mary DuPris' homicide. The results were inconclusive in all aspects. Mary DuPris' case went cold.

Approximately twenty years later, a detective reopened the Mary DuPris case. The detective conducted DNA testing on the preserved swabs. A CODIS hit matched the semen in the samples taken from Mary DuPris' body to Petitioner.

On July 20, 2012, Detectives interviewed Petitioner. During the interview, Petitioner told detectives that at the time of Mary DuPris' death, he "had a bad habit with prostitutes" who he used to pick up on Central Avenue. He also said sometimes he picked up a hitchhiker and that "if it ended up that way, that's the way it ended up, you know." He stated that he did not remember Mary DuPris and could not explain the presence of his DNA in her body. The detectives took a buccal swab from Petitioner. Further analysis revealed that Petitioner had a DNA profile similar to that found in the swabs.

In the course of the interview, Detectives also learned Petitioner owned a 1971 red Dodge pickup at the time of the murder, and he still owned it. Following the interview, Petitioner spoke telephonically about the truck with his ex-wife. He told her to "junk" it. He further stated the police could not get him on first-degree murder.

Based on the conversations between Petitioner and his wife, investigators obtained a search warrant for the truck. Forensic examination revealed blood on the seat. While testing established the blood as human, there was not enough of a sample to determine whose blood it was.

The State charged Petitioner with one count of first-degree murder.

At trial, Ms. Nations, Mr. Zabel Sr, and Mr. Zabel Jr testified. Through additional qualified witnesses, the prosecution presented evidence concerning the DNA, the truck, and the phone calls. A forensic scientist testified that sperm could stay in a person's throat for two to six hours.

On March 26, 2015, a jury found Petitioner guilty of first-degree murder. The state court judge sentenced him to life imprisonment.

Petitioner appealed his conviction to the New Mexico Supreme Court. First, he argued that there was insufficient evidence to establish his guilt.[5] Next, he contended that even if there was sufficient evidence of his guilt, there was no evidence supporting a finding of the intent element of first-degree murder. The State Supreme Court affirmed the conviction. It held that the jury had sufficient evidence to support its finding beyond a reasonable doubt that Petitioner deliberately had killed Mary DuPris. On March 9, 2017, Petitioner filed this Petition.

In his Petition, Petitioner makes the same arguments he made on direct appeal. First, he contends that a jury wrongfully convicted him of first-degree murder, as it had no conclusive evidence that he actually did the crime. Second, he argues that there was insufficient evidence to establish that he had the intent to commit first-degree murder.

In his Reply, Petitioner seeks to amend his Petition to include an additional claim under §2254(d)(1) based on ineffective assistance of appellate counsel. Petitioner argues that his appellate counsel was ineffective in failing to argue that his trial counsel committed certain errors. Petitioner claims he suffered prejudice when his trial attorney did not dispute forensic evidence by ordering additional testing or by challenging Ms. Nation's testimony as perjurious.

**Analysis**

**A. The Threshold Requirements for a State Prisoner Habeas Petition**

A federal court has statutory authority to consider habeas claims from a state prisoner under 28 U.S.C. §2254 as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *Jackson v. Virginia*, 443 U.S. 307, 320-21 (1979). Congress constructed the AEDPA to "further the principles of comity, finality, and federalism." *Williams v. Taylor*, 529 U.S. 420, 436 (2000). Toward that end, the AEDPA establishes a standard of deference for a federal court's review of habeas corpus petitions brought by state prisoners. *See Fairchild v. Workman*, 579 F.3d 1134, 1158 (10th Cir. 2009).

---

[5] In his New Mexico Supreme Court Statement of Issues on Appeal, Petitioner included a third claim that the trial court had erred in not granting the Defendant's Motion for a Bill of Particulars. But, he did not pursue this claim in his brief in chief and the New Mexico Supreme Court did not address it.

State prisoners can bring habeas claims under §2254 only after a state court has considered a claim on the merits, the petitioner has exhausted his state court remedies, and no independent and adequate state ground stands as a bar. *Jackson*, 443 U.S. at 321 (further citation omitted); 28 U.S.C. §2254(b). Failure to meet these requirements procedurally bars a claim. *Cone v. Bell,* 556 U.S. 449, 467 (2009); *see also Wilson v. Workman*, 577 F.3d 1284, 1294 (10th Cir. 2009). The exhaustion requirement is satisfied when the substance of a habeas claim has been presented to the state's highest court. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Dulin v. Cook*, 957 F.2d 758, 759 (10th Cir. 1992).

The Petitioner and the Respondent agree that the claims in the Petition based on sufficiency of the evidence meet the threshold requirements of §2254. The record supports this. In a direct appeal, the Petitioner brought these claims to the New Mexico Supreme Court, the state court of last review. The New Mexico Supreme Court considered the merits of the direct appeal and issued a decision. With these claims, Petitioner has exhausted his state court remedies and no procedural grounds bar them.

The same is not true of Petitioner's ineffective assistance of counsel claim. As a preliminary matter, the Petitioner did not timely file the Reply in which he asserts it. Under the Local Rules of Civil Procedure for the District of New Mexico, a Petitioner must file a Reply within fourteen days of a Response. D.N.M.LR-Civ. 7.4(a). Petitioner filed his Reply almost a week late. Although Petitioner asks the Court to consider his new claim based on his pro se status and the Court is mindful of the difficulties of appearing pro se, the record shows that even if the Court were to grant Petitioner leave to amend, he cannot meet the §2254 threshold requirements. Petitioner has not brought an ineffective assistance of counsel claim in state collateral proceedings or on direct appeal. Because Petitioner has not fairly presented this claim to state courts, Petitioner has not exhausted his state court remedies. Until Petitioner has exhausted his state court remedies regarding the alleged ineffective assistance of counsel claim, he cannot present it in a habeas claim to a federal court. On that basis, the Court denies Petitioner leave to amend his Petition.

**B. Habeas Claims Based on the Sufficiency of the Evidence**

Petitioner's habeas claims challenge the sufficiency of the evidence for his conviction. A state prisoner alleging a violation of Due Process rights because of a conviction based on insufficient evidence may bring a habeas claim under 2254(d)(2). *Jackson* 443 U.S. at 324. The §2254(d)(2) "applicant is entitled to

5

relief if it is found that upon the record of evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id.* In reviewing a claim based on §2254(d)(2), a court "must look to state law for 'the substantive elements of the criminal offense.'" *Coleman v. Johnson*, 566 U.S. 650, 655 (2012) (per curiam) (quoting *Jackson,* 443 U.S. at 324 n.16). Federal courts must give considerable deference to state court findings. *Jackson*, 443 U.S. at 319. Under the AEDPA, the only question for a federal court is whether the state court's findings were "so insupportable as to fall below the threshold of bare rationality." *Coleman*, 566 U.S. at 656. Both direct and circumstantial evidence are relevant in the inquiry. *Lucero v. Kerby*, 133 F.3d 1299, 1312 (10th Cir. 1998). A court "faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution." *Wright v. West*, 505 U.S. 277, 296-97 (1992) (citing *Jackson*, 443 U.S. at 326).

At times, a habeas claim phrased as a sufficiency of evidence argument is, in effect, a disagreement with a state court's interpretation of the elements of a state crime. Federal courts may not consider those claims. A state court's interpretation of the elements of an offense controls even if a federal court is convinced the state court misinterpreted state law. *Estelle v. McGuire*, 502 U.S. 62, 67-68. (holding "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). A federal court must limit its habeas review to evaluating whether a conviction "violated the Constitution, laws, or treaties of the United States." *Id*. Therefore, as a preliminary matter, a federal court must determine whether a challenge to a state court's ruling is a *Jackson* challenge based on sufficiency of the evidence or a challenge to the court's interpretation of state law. *Anderson-Bey v. Zavaras*, 641 F.3d 445, 448 (10th Cir. 2011). Often a claim will be both, because a state court first will have determined the meaning of an element of a crime before deciding whether the record supports an inference that necessary facts were present. *Id.* at 448-449. A federal court cannot review the first step, but may review the second. *Id.*

Here, Petitioner argues that the record does not support his first-degree murder conviction. In New Mexico, first-degree murder consists of "the killing of one human being by another without lawful justification … (1) by any kind of deliberate and premediated killing." NMSA 1978 § 30-2-1(A)(1)(1994). At Petitioner's trial, the jury was instructed that to find him guilty of a willful and deliberate murder, the State must prove

beyond a reasonable doubt: "(1) Defendant killed DuPris; (2) the killing was with the deliberate intention to take away the life of DuPris; (3) this happened in New Mexico on or about the 26th day of December, 1991." *State v. Morris*, No. S-1-SC-3529, 2016 WL 6804425, at *3-4 (N.M. Nov. 17, 2016).

Petitioner does not dispute that these are the elements of the crime or that the jury received this instruction. One of his claims is that the State offered no evidence that he killed Mary Dupris with deliberate intent. The State can prove deliberate intent, Petitioner states, only when it shows that a defendant weighed the considerations both for and against the proposed course of actions. He also argues that when the State indicated that the evidence supported a conviction under the lesser-included offense of second-degree murder, it was an admission by the State that it did not have enough evidence to prove first-degree murder.

Petitioner's claim is a mixed claim, which includes both a challenge to the state court's interpretation of what constitutes deliberate intent and a challenge to the sufficiency of the evidence in establishing that intent. Petitioner alleges that, by definition, the state can establish deliberate intent only when there is evidence of a specific intention or plan to commit first-degree murder. In Petitioner's direct appeal, the New Mexico Supreme Court addressed this argument. It quoted the jury instruction for "deliberate intent" which includes in the definition "'[a] calculated judgment and decision [that] may be arrived at in a short period of time." *Morris*, 2016 WL 6804425, at *5. The New Mexico Supreme Court noted further that in New Mexico deliberate intent is rarely established through direct evidence but "'may be inferred from the particular circumstances of the killing as proved by the State through the presentation of physical evidence.'" *Id.*, (quoting *State v. Duran*, 140 N.M. 94, 98 (N.M. 2006) (further citation omitted). The Court must assume that the state court's interpretation of this element is correct, and it will not consider Petitioner's arguments on what constitutes deliberate intent under New Mexico law.

Next, Petitioner argues that the state did not present sufficient evidence that he had the intent to kill or that he actually killed Mary DuPris because the record does not include any evidence regarding how, when, or why. Under federal law, evidence is sufficient when, viewed in the light most favorable to the prosecution, it supports a rational trier of fact finding of the essential elements of a crime beyond a reasonable doubt. *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972). Evidence need not be direct evidence. A jury has broad discretion to draw reasonable inferences from trial evidence. *Jackson*, 443 U.S. at 319. The court must "accept the jury's

resolution of the evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487 (10th Cir. 1993).

After reviewing the evidence, the New Mexico Supreme Court concluded that the evidentiary record supported the jury's finding of the intent element. It found that the following evidence supports a factfinder making a valid inference of deliberate intent:

> The evidence presented at trial demonstrates that Defendant had a pattern of frequenting prostitutes, that he abducted DuPris and that she did not go willingly, that his sperm was found in DuPris' mouth, and that the cause of death was single gunshot wound to the right temple of DuPris' head. A reasonable jury could infer from these facts, the surrounding circumstances of DuPris' abduction, and the location whether the body was found that Defendant engaged in a calculated series of acts designed to abduct, rape, and kill DuPris. Additionally, a reasonable jury could infer that after Defendant forced DuPris to engage in intercourse, and before shooting her in the head, he weighed the consequences of his course of action, and considered the question of killing DuPris.

*Morris*, 2016 WL 6804425 at *5. In addressing Petitioner's claims that there was insufficient evidence that he committed the act of first-degree murder, the New Mexico Supreme Court found that there was sufficient evidence for a jury to find beyond a reasonable doubt that Petitioner killed DuPris. Specifically, it observed:

> The evidence presented at trial proved that Defendant lived about five miles from where DuPris' body was found, that he frequented prostitutes on Central Avenue, that he owned a red pickup, and that he attempted to dispose of his truck before police seized it. It is also clear from the evidence that Defendant's sperm was present on oral swabs taken from DuPris' body and that human blood was found on the front seat of Defendant's truck.

*Morris*, 2016 WL 6804425 at *4. Petitioner does not dispute that the evidence discussed by the New Mexico Supreme Court was before the trial jury. His sole argument is that this evidence does not support a rational inference that he murdered Mary DuPris because there is no direct evidence of his intent and the evidence does not rule out someone else having committed the murder.

Here, the state court of last review found that the record is replete with circumstantial evidence that backs inferences of both the act and the requisite intent elements of New Mexico first-degree murder. Under the AEDPA that determination is entitled to deference. Petitioner has raised no argument that overcomes that deference. He does not dispute the existence of the evidence; he only disputes the inferences taken from it. Evidence that is susceptible to more than one interpretation does not negate a jury's findings or make them irrational. *Jackson,* 443 U.S. at 326 (citing *Holland v. United States*, 348 U.S. 121, 140 (1955)). The record

shows that there was sufficient evidence for a rational trier of fact to find the Petitioner guilty of first-degree murder beyond a reasonable doubt.

IT IS THEREFORE ORDERED that PETITIONER'S REPLY TO RESPONDENTS ANSWER TO PETITION FOR HABEAS CORPUS (28 U.S.C. §2254) seeking to amend his Petition is DENIED without prejudice and Petitioner's PETITION FOR A WRIT OF HABEAS CORPUS is DISMISSED with prejudice. A Final Judgment will be entered.

_____
SENIOR UNITED STATES DISTRICT JUDGE